UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-11-3421 |
| DAVID F. MICKELSON, | § § § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Plaintiff American General Life Insurance Company's ("American General") Motion for Partial Summary Judgment. (Doc. No. 19.) After considering the motion, all responses thereto, and the applicable law, the Court finds that Plaintiff's Motion for Partial Summary Judgment should be **GRANTED**.

**I.   BACKGROUND**

Plaintiff American General is in the business of underwriting and issuing policies of life insurance. (Doc. No. 1, Compl. ¶ 6.) Defendant David Mickelson entered into an Agent Contract with Plaintiff to solicit applications for Plaintiff's insurance plans. (*Id.* ¶¶ 7–8; Doc. No. 19-4, Agent Contract.) Mickelson's Agent Contract requires agents to "repay to [American General], on demand, any unearned commissions or service fees received by [agents] for, or with respect to, premiums or payments returned to policy or contract owners by [American General] for any reason." (Agent Contract, provision 4.7.)

Mickelson marketed American General life insurance to a customer named Adele Ciccati, who ultimately applied for and was issued a policy (hereinafter "the Ciccati policy"). (Doc. No.

1

19-3, Aff. of Jay Lohman ¶¶ 9–10.) American General paid Mickelson $83,329.20 in commissions when the policy was issued to Ciccati in January 2007. (Lohman Aff. ¶ 11.)

On or about February 4, 2011, American General received a letter from the California Department of Insurance regarding a complaint Ciccati filed with the agency. (Doc. No. 19-6, Letter from California Department of Insurance, at 1.) The Department of Insurance found that Mickelson "did not exercise a duty of honesty, good faith, and fair dealing" in the sale of the aforementioned policy to Ciccati. (*Id.*) The agency determined that "the appropriate resolution to this complaint is a full refund of the premiums, with interest" and directed American General to "[p]lease immediately effectuate this resolution and provide [the agency] with written confirmation." (*Id.*, at 2.) The agency also requested numerous documents related to the sale of the life insurance policy to Ciccati and American General's standard procedures. (*Id.*) In accordance with this letter, American General rescinded the Ciccati policy and returned all premiums to Ciccati. (Lohman Aff. ¶ 12.)

After returning the premiums to Ciccati, American General charged back the commissions it paid Mickelson for selling the Ciccati policy. (Lohman Aff. ¶ 13; Doc. No. 19-7, March 16, 2011 Demand Letter; Doc. No. 19-8, March 28, 2011 Demand Letter.) American General contends that Mickelson is required to repay the commission under the Agent Contract because, once American General returned the premiums to Ciccati, Mickelson's commission became unearned. (Doc. No. 19, Mot. for Partial Summ. J., at 4; Lohman Aff ¶ 8.) Mickelson has not returned the commission he received for the Ciccati policy, although American General has withheld other commissions payable to Mickelson to offset his alleged debt. (Lohman Aff. ¶¶ 14–15; Doc. No. 19-14, Def.'s Resps. to Pl.'s Second Set of Reqs. for Admis., No. 13.) Despite these offsets, American General maintains that Mickelson still owes it $72,109.36.

2

(Lohman Aff. ¶ 15.)[1]  Mickelson argues that the commission he received for selling life insurance to Ciccati is not "unearned" and therefore outside the scope of provision 4.7 of the Agent Contract. (Doc. No. 19-15, Def.'s Resps. to Pl.'s First Set of Interrogs., No. 4.)

American General now moves for partial summary judgment, arguing that there is no genuine issue of material fact that Mickelson breached the Agent Contract. (Mot., at 2.)[2]

## II.     LEGAL STANDARD

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed. R. Civ. P. 56(a).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted).  "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted).

"Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party." *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 188 (5th Cir. 2007). The Court may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  "The court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from

---

[1] In its Complaint, American General pled that Mickelson still owed a different sum, $78,511.90, after offsets by other commissions payable but withheld by American General. (Compl. ¶ 11.) The Court addresses the impact of the drop of the amount in controversy on its jurisdiction *infra* Part III.A.

[2] In its Complaint, American General also alleged breach of fiduciary duty. (Compl. ¶¶ 15–18.) However, it only moves for summary judgment on its breach of contract claim.

disinterested witnesses.'"  *Id.* at 151.  Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence.  Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a nonmovant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III.  ANALYSIS

#### A.  Jurisdiction

Because federal courts are courts of limited jurisdiction, "it is incumbent upon federal courts trial and appellate to constantly examine the basis of jurisdiction, doing so on our own motion if necessary."  *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir. 1981).  As the basis for jurisdiction in this case is diversity jurisdiction under 28 U.S.C. § 1332, the Court feels compelled to evaluate what impact, if any, the drop in amount in controversy since the outset of this litigation has on its jurisdiction.

When American General brought its claims against Mickelson, it alleged that Mickelson owed over $75,000 in charged-back commission.  (Compl. ¶ 11.)  Since then, that amount has decreased to $72,109.36.  (Lohman Aff. ¶ 15.)  This may be due to American General having withheld additional commissions otherwise payable to Mickelson since the initiation of this lawsuit.  (*See id.*)  Partial recovery of alleged damages after a suit has been filed, however, cannot divest a court of jurisdiction because "jurisdictional facts must be judged as of the time the complaint is filed; subsequent events cannot serve to deprive the court of jurisdiction once it has attached."  *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253–54 (5th Cir.

4

1998) (citations omitted). *See also Lindsey v. M.A. Zeccola & Sons, Inc.*, 26 F.3d 1236, 1244 n.10 (3d Cir. 1994) (noting that "[w]hen diversity exists at the time the case is filed, it is not affected by the dismissal of one of the claims even though the amount recoverable on the remaining claim is less than the required [jurisdictional amount]"); *Commercial Credit Corp. v. Lane*, 466 F. Supp. 1326, 1330 (M.D. Fla. 1979) (holding that, when plaintiffs recovered some of the alleged debt owed by defendants while their lawsuit was pending, the court retained jurisdiction because, at the time of filing, plaintiffs had alleged, in good faith, damages in excess of the jurisdictional amount).

Furthermore, American General also seeks attorney's fees in connection with this lawsuit. (Compl. ¶ 19.) Texas law provides that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code § 38.001(8). "When a statutory cause of action entitles a party to receive attorneys' fees, the amount in controversy includes those fees." *H&D Tire and Automotive-Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 330 (5th Cir. 2000) (citation omitted). Accordingly, even if $72,109.36, and not $78,511.90, were the relevant damages figure, the Court is assured that, when attorney's fees are factored into the equation, the minimum amount in controversy is met.

### B. Contract Interpretation

In interpreting a contract, a court's primary concern is to give effect to the true intent of the contracting parties. *Sw. Bell Tel. Co. v. Fitch*, 801 F. Supp. 2d 555, 566 (S.D. Tex. 2011) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005)); *Burns v. Exxon Corp.*, 158 F.3d 336, 340 (5th Cir. 1998) (citation omitted). To achieve this objective, courts "must examine and consider the entire writing in an effort to harmonize and give effect to all the

provisions of the contract so that none will be rendered meaningless." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (citations omitted).

The terms in a contract are to be given their "generally accepted or commonly understood meaning" unless otherwise defined in the contract. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (2007) (citing *W. Reserve Life Ins. v. Meadows*, 152 Tex. 559, 261 S.W.2d 554, 557 (Tex. 1953)). "In construing a specific contractual term, [courts] must give consideration to the meaning attributed to that term in the industry." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000) (citation omitted); *see also Pers. Preference Video, Inc. v. HBO*, 986 F.2d 110, 114 (5th Cir. 1993) (holding that clear industry meaning of a contested term provides evidence that the contract is susceptible to only one reasonable interpretation); *Fitch*, 801 F. Supp. 2d at 566. "Under Texas law '[i]f the written instrument is so worded that it can be given a certain or definite meaning or interpretation, then it is not ambiguous . . . ." *Square D Co. v. House of Power Elec., L.C.*, No. H–09–3917, 2011 WL 6091805, at *3 (S.D. Tex. Dec. 7, 2011) (quoting *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (citation omitted). Interpretation of an unambiguous contract is a legal issue that is properly decided on summary judgment. *Boudreaux v. Unionmutual Stock Life Ins. Co., of Am.*, 835 F.2d 121, 123 (5th Cir. 1988).

"If, however, the language of a policy or contract is subject to two or more reasonable interpretations, it is ambiguous." *Nat'l Union*, 907 S.W.2d at 520 (citations omitted). "An ambiguity does not arise simply because the parties offer opposing interpretations." *Building Specialties, Inc. v. Liberty Mut. Fire Ins. Co.*, 712 F. Supp. 2d 628, 635 (S.D. Tex. 2010) (citing *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006)). "An ambiguity arises only after

the application of established rules of construction leaves an agreement susceptible to more than one meaning." *DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999) (citing *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1980)). "Further, for an ambiguity to exist, both potential meanings must be reasonable." *Id.* (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)). "Ambiguity must be evident from the policy itself; it cannot be created by introducing parol evidence of intent." *Fiess*, 202 S.W.3d at 745 (citing *Nat'l Union*, 907 S.W.2d at 521). "When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue." *Coker*, 650 S.W.2d at 394; *see also JRG Capital Investors I, LLC v. Doppelt*, No. H–11–3299, 2012 WL 2529256, at *3 (S.D. Tex. June 28, 2012). "Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation." *Nat'l Union*, 907 S.W.2d at 520 (citing *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981)). "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Id.* at 520 (citing *Coker*, 650 S.W.2d at 394; *R & P Enterps.*, 596 S.W.2d at 518).

Here, American General contends that the Agent Contract is unambiguous in requiring Mickelson to return any commissions paid in connection with premiums that were returned to a policy holder for any reason. (Mot., at 4; Reply, at 3.) Mickelson argues that the term "unearned commissions" in provision 4.7 of the Agent Contract is ambiguous because it is nowhere defined in the contract and because it can reasonably be understood to refer only to those commissions paid in connection with policies that were terminated by the customer during the "free look" period when a purchaser may return a policy shortly after purchase. (Doc. No. 20, Resp., at 4;

7

Doc. No. 20-5, Mickelson Dep. 20:18–21:24; Def.'s Resps. to Pl.'s First Set of Interrogs., No. 4.)[3]

The Court must agree with American General that the term "unearned commissions" is not ambiguous.  Defendant cites no language in the Agent Contract nor does he offer any other evidence showing that the term "unearned commissions" refers only to commissions received in connection with premiums returned during the "free look" period.  *See Square D*, 2011 WL 6091805, at *8 (rejecting Defendant's proffered interpretations because they have no support in the language of the contract); *cf. Kona*, 225 F.3d at 611 (considering expert testimony to interpret contract provisions having specialized meaning in the industry).

Furthermore, it is clear from the term itself and from the contract as a whole that there is only one reasonable interpretation of the term "unearned commissions":  commissions that were paid to an agent in connection with premiums that were subsequently returned to the policyholder for any reason.  Texas courts have repeatedly understood the term "unearned commission" in this manner, and this Court sees no reason to deviate from this interpretation. *See, e.g.*, *In re Bossier*, No. 11-61300, 2012 WL 2891215, at *1 (W.D. Tex. July 16, 2012) (noting that the agent owed the insurance company a refund of the "unearned commission—the portion of the commission corresponding to the unearned premium"); *Bouknight v. Langdeau*, 333 S.W.2d 670, 678 (1959) (explaining that, where one year policy was cancelled mid-year, half of the commissions earned by the agent had become unearned); *Wheeler v. Clark*, 306 S.W.2d 158, 159 (1957) (referring to commissions earned in connection to terminated policies as "unearned commissions"); *CRS Ins. Agency, Inc. v. Moor Gen. Agency, Inc.*, No. 09-95-196 CV, 1997 WL 34388, at *8 (Tex. App.—Beaumont Jan. 30, 1997, no pet.) (not designated for

---

[3] The "free look" period is a statutorily mandated 30-day period during which the consumer has the right to receive an unconditional refund of all premiums paid.  Cal. Ins. Code § 10509.6(d).

publication) (explaining that the "unearned commissions awarded to Moor by the trial court reflected amounts retained by CRS for commissions on policies, which were subsequently canceled, rendering those commissions unearned by CRS).

Furthermore, as American General points out, Mickelson's proposed interpretation of the term would conflict with the rest of provision 4.7, which specifically provides that it applies to unearned commissions received with respect to premiums returned to policy owners "for any reason." (Reply, at 4; Agent Contract, provision 4.7.) Interpreting "unearned commissions" to refer only to commissions received in relation to premiums returned to policy owners during the "free look" period would require the Court to read out of the contract the phrase "for any reason;" such an interpretation would effectively mean that only one reason for returning premiums to policy holders, a statutory mandate, could render a commission unearned. In view of the entirety of provision 4.7, Court cannot agree that Mickelson's proposed interpretation is reasonable. *See DeWitt*, 1 S.W.3d at 100 ("[F]or an ambiguity to exist, both potential meanings must be reasonable."); *Albemarle Corp. v. MEMC Elec. Materials, Inc.*, 685 F. Supp. 2d 652, 659–660 (S.D. Tex. 2010) ("[C]ourts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract . . . .") (emphasis in original) (citations omitted).

Finally, Mickelson contends at length that American General was under no obligation to return Ciccati's premiums. (Resp., at 7–10.) Mickelson argues that American General should have contested the Department of Insurance's determinations. (*Id.*) He even characterizes the letter from the Department of Insurance, as not "express[ly] requir[ing]" American General to return the premiums and inviting the insurance company to reply to its determination. (*Id.* at 7.) The Court does not agree with this characterization, and, in any event, it does not find this line of

9

argument relevant.  The agency plainly determined that "the appropriate resolution to [Ciccati's] complaint is a full refund of the premiums, with interest" and directed American General to "[p]lease immediately effectuate this resolution and provide [the agency] with written confirmation."  (Letter from California Department of Insurance, at 2.)  The requested reply Mickelson references did not offer an opportunity to contest the agency's findings; rather the agency sought specific information from American General.  (*Id.*)  More importantly, however, provision 4.7 of the Agent Contract applies to unearned commissions received in connection with premiums returned "for any reason."  (Agent Contract, provision 4.7.)  Even if Mickelson is correct that American General was not obliged to return the premiums to Ciccati, once it did so, his commissions related to those returned premiums became unearned.

### C. Breach of Contract

To prevail on a breach of contract claim under Texas law, a plaintiff must show: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

Although Mickelson contends that the Agent Contract is ambiguous, he does not dispute that it is a valid contract.  Indeed, he admits its validity by recognizing that it governs his relationship with American General.  (Doc. No. 19-13, Def.'s Resps. to Pl.'s First Set of Reqs. for Admis., No. 1.)  Nor does Mickelson argue that American General has failed to perform under the contract.  To the extent his contentions that American General should have challenged the Department of Insurance's determination with regard to the Ciccati policy are an argument that American General breached its contractual obligations, Mickelson has not pointed to any

contractual provision in the Agent Contract that imposed such an obligation on American General, and this Court sees none. American General has performed its obligations by paying Mickelson commissions for selling a policy to Cicatti. (Lohman Aff. ¶ 11; Def.'s Resps. to Pl.'s First Set of Reqs. for Admis., No. 2.) Mickelson has breached provision 4.7 of the Agent Contract by refusing to return the commissions he received for the Ciccati policy after American General has demanded them. (Agent Contract, provision 4.7; March 16, 2011 Demand Letter; March 28, 2011 Demand Letter.) American General continues to suffer damages in the amount of $72,109.36 as a result of this breach. (Lohman Aff. ¶ 15.)

Because no genuine issue of material fact remain as to the meaning of the Agent Contract or any of the elements of a breach of contract claim, American General is entitled to summary judgment on its breach of contract claim.

### III.   CONCLUSION

For the reasons discussed in this order, Plaintiff's Partial Motion for Summary Judgment (Doc. No. 19) is **GRANTED**.

**IT IS SO ORDERED**.

**SIGNED** in Houston, Texas, on this the 3rd day of December, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE